

249-06/GMV/PLS

**FREEHILL HOGAN & MAHAR, LLP**
Attorneys for Plaintiff
EUROFINANCE SERVICES INC.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

Gina M. Venezia (GV 1551)
Pamela L. Schultz (PS 0335)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

EUROFINANCE SERVICES INC.,                                **06 CV**

                        Plaintiff

                                                          **VERIFIED COMPLAINT**

                -against -

SINOMART KTS DEVELOPMENT LTD.

                        Defendant.
-------------------------------------------------------------------x

Plaintiff EUROFINANCE SERVICES INC. ("EUROFINANCE"), through its attorneys Freehill Hogan & Mahar, LLP, as and for its Verified Complaint against Defendant SINOMART KTS DEVELOPMENT LTD. ("SINOMART"), alleges upon information and belief as follows:

1.  This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract by Defendant SINOMART ("SINOMART"). The case also falls within the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333. Jurisdiction is also proper pursuant to the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331. Federal jurisdiction also exists because the action arises under the New

York Convention on the Recognition and Enforcement of Foreign Arbitral Awards at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2.   At all times relevant hereto, Plaintiff EUROFINANCE was and still is a foreign business entity duly organized and existing under the laws of a foreign country with a place of business at 80 Broad Str, Monrovia, Liberia.

3.   At all times relevant hereto, Defendant SINOMART was and still is a foreign business entity duly organized and existing under the laws of Hong Kong with a care of address at 1608 Citicorp Centre, 18 Whitfield Road, Causeway Bay, Hong Kong.

4.   On or about June 11, 2004, Plaintiff EUROFINANCE, as owner, and SINOMART, as charterer, entered into a maritime contract of charter party for the chartering of the M/T BAGI (hereinafter "charter party"). A true and correct copy of the charter party is attached hereto as Exhibit 1.

5.   The charter party contained clauses calling for the application of English Law with London Arbitration as to "any and all differences and disputes of whatsoever nature arising out of this Charter" (Exhibit 1, ¶ K of Preamble, Clause 24 of Part II, ¶6 of Special Provisions, and ¶ 3 of Sinochem Standard Chartering Terms).

6.   Disputes arose between EUROFINANCE and SINOMART under the charter party regarding amounts due and owing for demurrage, *quantum meruit* and wasted bunkers. Thereafter, in accordance with the relevant clauses of the charter party, the disputes were submitted to London arbitration.

7.   SINOMART did not respond to or otherwise oppose EUROFINANCE's Claim Submissions or Schedule of Costs. Accordingly, the Arbitration Tribunal

consisting of three arbitrators unanimously rendered a Final Arbitration Award ("Award") in EUROFINANCE's favor and against SINOMART all in connection with SINOMART's breach of the maritime charter party. A true and correct copy of the Award is attached hereto as Exhibit 2.

    8.  The Award in favor of EUROFINANCE and against SINOMART is as follows:

    a) USD $58,800.98 at a rate of 6.5% per annum compounded quarterly from August 5, 2004 until the date of payment on the demurrage, *quantum meruit*, and wasted bunkers claims. (Exhibit 2, p.6, ¶ A);

    b) GBP £3,005.00 together with interest at the rate of 6.5% per annum compounded quarterly calculated from the date of the publication of the Award, May 9, 2006, until payment, for EUROFINANCE's legal costs and fees pursuant to Section 63 of the Arbitration Act, 1996 (Exhibit 2, p.6, ¶ B). This component of the Award is hereinafter referred to as "Costs";

    c) GBP £4,150.00 for the cost of the Arbitration, together with interest at the rate of 6.5% per annum compounded quarterly calculated from the date such costs were paid, May 4, 2006, until payment. (Exhibit 2, p. 6, ¶ C) This component of the Award is hereinafter referred to as "Cost of Arbitration";

    9.  Despite due demand, all of the amounts awarded to EUROFINANCE in London arbitration remain due and outstanding.

10. Plaintiff EUROFINANCE has fulfilled all obligations required of it under the charter party.

11. This action is brought to obtain jurisdiction over Defendant SINOMART to confirm and enforce the Award, as well as to obtain security in favor of Plaintiff EUROFINANCE in respect to EUROFINANCE's claims against Defendant SINOMART and the aforementioned Award.

12. This action is further brought to obtain security for any additional sums to cover Plaintiff's anticipated attorney fees and costs in these proceedings and interest, all of which are recoverable under English law, the law applicable to the contract.

13. This Verified Complaint is filed subject to and without waiver of any arbitration rights which might exist by virtue of any contract or agreement.

14. Upon information and belief, and after investigation, Defendant SINOMART cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant SINOMART (collectively hereinafter, "ASSETS"), including but not limited to ASSETS in its name as may be held, received, or transferred in its own name, or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking institutions including but not limited to JPMorgan Chase Bank, Citibank, American Express Bank, Bank of America, The Bank of New York, HSBC, HSBC USA Bank NA, BNP Paribas,

Deutsche Bank, Wachovia Bank, ABN Amro, and Standard Chartered Bank and/or other institutions or such other garnishees whose identities become known to Plaintiff's counsel in the future.

15. As nearly as can be computed, the total amount of Plaintiff EUROFINANCE's claim which is sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by EUROFINANCE against SINOMART is **$113,223.90** consisting of the following:

### Award for Demurrage, *Quantum Meruit* and Wasted Bunkers

i.    Unpaid Award pertaining to demurrage, *quantum meruit* and wasted bunkers in the sum of **USD $58,800.98**

ii.   Interest on Award pertaining to demurrage, *quantum meruit* and wasted bunkers at the rate of 6.5% per annum compounded quarterly from August 5, 2004 to the date of the filing of the Verified Complaint herein, totaling **USD $8,498.34.**

iii.  Interest on Award pertaining to demurrage, *quantum meruit* and wasted bunkers at the rate of 6.50% per annum compounded quarterly from date of filing of the Verified Complaint for an estimated time of two years until judgment herein, totaling **USD $10,507.15;**

### Award on Costs

iv.   Unpaid Award on Costs in the amount of **GBP £3,005 (USD $5,618.69)**[1];

---

[1] Using a conversion rate of May 31, 2006 of 1 GBP = 1.86978 USD.

v. Interest on Costs awarded at the rate of 6.5% per annum compounded at quarterly from May 9, 2006 until the date of filing the Verified Complaint, totaling **USD $30.02**;

vi. Interest on Costs awarded at the rate of 6.5% per annum compounded quarterly from the date of filing of the Verified Complaint for an estimated time of two years until judgment therein, totaling **USD $881.91.**

## Award on Cost of Arbitration

vii. Unpaid Award on Cost of Arbitration paid by Owners in the amount of **GBP £4,150 (USD $7,639.11)**[2];

viii. Interest on Cost of Arbitration paid by Owners at the rate of 6.5% per annum compounded quarterly from May 4, 2006 until the date of filing of the Verified Complaint in the amount of **USD $47.61.**

ix. Interest on Cost of Arbitration paid by Owners to commence arbitration at the rate of 6.5% per annum compounded quarterly from the date of the filing of the Verified Complaint for an estimated time of two years until judgment therein, totaling **USD $1,200.09.**

## Attorney Fees and Costs Herein

x. Estimated attorney fees and costs in connection with these proceedings for a total of **USD $20,000.00.**

WHEREFORE, Plaintiff EUROFINANCE prays:

---

[2] Using a conversion rate of May 4, 2006 of 1 GBP = 1.84075 USD

a.     That process in due form of law according to the practice of this Court issue against Defendant SINOMART, citing it to appear and answer the foregoing, failing which a default will be taken against it for the principal amount of the claim plus interest up until the date of filing as set forth in the Award of $80,634.75 as of the date of filing of the Verified Complaint plus interest until paid.

b.     That if Defendant SINOMART cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant SINOMART, up to and including the claim of **$113,223.90** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendant SINOMART (collectively hereinafter, "ASSETS"), including but not limited to such ASSETS as may be held, received, or transferred in its own name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking institutions including but not limited to JPMorgan Chase Bank, Citibank, American Express Bank, Bank of America, The Bank of New York, HSBC, HSBC USA Bank NA, BNP Paribas, Deutsche Bank, Wachovia Bank, ABN Amro, Standard Chartered Bank and/or other institutions or such other garnishees that may be subsequently identified and upon whom a copy of the Process of Maritime Attachment and Garnishment issued herein be served;

c.    That this Court determine and adjudge Plaintiff entitled to enforce the Award and enter judgment in Plaintiff's favor thereon and against Defendant in the amount of $80,634.75, plus interest and costs, and otherwise recognize, confirm and enter judgment on the subject Award; and

d.    That Plaintiff EUROFINANCE have such other, further and different relief as this Court may deem just and proper in the premises.

Dated:        New York, New York
              June    , 2006

                        FREEHILL HOGAN & MAHAR, LLP
                        Attorneys for Plaintiff
                        EUROFINANCE SERVICES INC.

              By:    _____
                        Gina M. Venezia (GV 1551)
                        Pamela L. Schultz (PS 0335)
                        80 Pine Street
                        New York, NY  10005
                        (212) 425-1900
                        (212) 425-1901 fax

## ATTORNEY VERIFICATION

STATE OF NEW YORK     )
                         ) ss.:
COUNTY OF NEW YORK  )

      GINA M. VENEZIA, being duly sworn, deposes and says as follows:

      1.    I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

      2.    The sources of my information and the grounds for my belief are communications, information and documentation provided by our client.

      3.    The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

                                                                 GINA M. VENEZIA

Sworn to before me this
  8  day of June, 2006.

CLARE HENRY
Notary Public, State of New York
No. 01HE4831498
Qualified in Kings County
Certificate in New York County
Commission Expires October 31, 2009

EASTPORT CHARTERING PTE LTD
1 MARITIME SQUARE #12-20
HARBOURFRONT CENTRE
SINGAPORE 099253
TEL : 62733232  TLX : RS 34186

CODE WORD FOR THIS
CHARTER PARTY

AS BATANK VOY

# COPY

# TANKER VOYAGE CHARTER PARTY

FN : D0233

MARVIN SHIPPING LTD.
70, FILONOS - PIRAEUS 18535, GREECE
PHONE: 21 04 56 75 00

PREAMBLE

| | |
|---|---|
| SINGAPORE | 11 JUNE 2004 |
| Place | Date |

IT IS THIS DAY AGREED between

EUROFINANCE SERVICES INC

owner (hereinafter called the "Owner") of the

PANAMA FLAG

BAGI

(hereinafter called the "Vessel")

and SINOMART KTS DEVELOPMENT LTD

(hereinafter called the "Charterer")

that the transportation herein provided for will be performed subject to the terms and conditions of this Charter Party, which includes this Preamble and

Part I and Part II. In the event of a conflict, the provisions of Part I will prevail over those contained in Part II.

PART I

LOA/BEAM : 243.70 METRES/41.60 METRES
BCH/KTM : 123.0 METRES/53.20 METRES
TPC     : 87.64 METRIC TONS  BUILT : 1985
DERRICKS : 2 X 15 TONS SAFE WORKING LOAD
FITTED IGS/COW/SBT

A.  Description and Position of Vessel:
    91,902 METRIC TONS
    Deadweight:         /

    Classed: LLOYDS

    Loaded draft of Vessel on assigned summer freeboard 13,509M   in salt water.
    94,540 CUBIC METRES
    Capacity for cargo:      /                98 %                  EXCLUDING SLOPS

    Coated:      ☒ Yes   ☐ No

    Coiled:      ☒ Yes   ☐ No         Last cargo(es):   FUELOIL/PETROEAST
                                                        FUELOIL/FAIRMONT

    Now:   TRADING                     Expected Ready:   AS NOMINATED

    Laydays:

        Commencing:  28 JUNE 2004 (NOON)        Cancelling:  29 JUNE 2004 (NOON)

C.  Loading Port(s):   ONE(1) SAFE SHIP-TO-SHIP OFF PORT LIMIT HONG KONG

D.  Discharging Port(s):   ONE(1) SAFE PORT HUIZHOU, CHINA



EXHIBIT

1

CHARTERER'S OPTION UP TO FULL CARGO NO HEAT CRUDE
MAXIMUM 2 GRADES WITHIN VESSEL'S NATURAL SEGREGATION

F.   Freight Rate:  LUMPSUM USD 270,000

G.   Freight Payable to:  OWNER'S DESIGNATED BANK ACCOUNT IN USD BY TELEGRAPHIC TRANSFER  at

H.   Total Laytime in Running Hours:   NINETY SIX (96) TOTAL

I.   Demurrage per day:   USD 25,000 PER DAY OR PRO RATA

J.   Commission of _ % is payable by Owner to

     on the actual amount of freight, when and as freight is paid.

K.   The place of General Average and arbitration proceedings to be London/New York (strike out one).

L.   ~~Tovalop: Owner warrants vessel to be a member of TOVALOP scheme and will be so maintained throughout duration of this charter.~~

M.   Special Provisions:

     IT IS UNDERSTOOD AND AGREED THAT M.1 THROUGH M.14 AS ATTACHED HEREWITH ARE TO BE INCORPORATED IN THIS
     CHARTER PARTY.

     IN WITNESS WHEREOF, the parties have caused this Charter, consisting of a Preamble, Part I and be executed in duplicate as of
     the day and year first above written.

Witness the signature of:

                                                    EUROFINANCE SERVICES INC

                                          By: _____
                                                    (AS OWNER)

                                          SINOMART KTS DEVELOPMENT LTD

Witness the signature of:

                                          By: _____
                                                    (AS CHARTERERS)

# PART II

**BILL OF LADING**

Shipped in apparent good order and condition by _____

on board the _____

Whereof _____ is Master, at the port of _____

to be delivered in the port of _____

or at so near thereto as the Vessel can safely get, always afloat, unto _____

or order on payment of freight at the rate of _____

This shipment is carried under and pursuant to the terms of the charter dated New York/London _____

between _____ and _____

Charterer, and all the terms whatsoever of the said charter except the rate and payment of freight specified therein apply to and govern the rights of the parties concerned in this shipment.

In witness whereof the Master has signed _____ Bills of Lading

of this tenor and date, one of which being accomplished, the others will be void.

Dated at _____ this _____ day of _____

_____
Master

SPECIAL PROVISIONS FOR BAGI
CHARTER PARTY DATED 11 JUNE 2004
------------------------------------

1. FOR ALL SHIP-TO-SHIP OPERATIONS TO BE PERFORMED IN
   ACCORDANCE WITH OCIMF SHIP-TO-SHIP TRANSFER GUIDELINES.
   CHARTERER TO PROVIDE ALL NECESSARY FENDERS/HOSES/EQUIPMENT
   ETC FOR A SAFE OPERATION.

2. ANY TAXES AND OR DUES ON CARGO AND OR FREIGHT TO BE FOR
   CHARTERER'S ACCOUNT AND SETTLED DIRECTLY BY CHARTERER.

3. FULL TIME TO COUNT WEATHER PERMITTING AT SHIP-TO-SHIP
   HONG KONG.

4. ALL SHIP-TO-SHIP COST AND EXPENSES AT OFF PORT LIMIT
   HONG KONG TO BE FOR CHARTERER'S ACCOUNT AND TO BE SETTLED
   DIRECTLY BY THEM BUT MAXIMUM USD 3,000 ON AGENCY AND
   HANDLING FEES TO BE FOR OWNER'S ACCOUNT.

5. ALL COST AT DISPORT TO BE FOR CHARTERER'S ACCOUNT AND TO
   BE SETTLED DIRECTLY BY CHARTERER.

6. GENERAL AVERAGE/ARBITRATION LONDON ENGLISH LAW.

7. WORLDSCALE TERMS AND CONDITIONS AND EXTRAS IF ANY
   TO BE APPLICABLE.

8. MAXIMUM 3 HOURS WAITING FOR DOCUMENTS TO BE FOR
   OWNER'S ACCOUNT.

9. OVERAGE INSURANCE IF ANY FOR CHARTERER'S ACCOUNT.

10. ANY DUES AND OR TAXES AND OR LEVY ON CARGO AND OR FREIGHT
    TO BE FOR CHARTERER'S ACCOUNT AND SETTLED DIRECTLY BY THEM.

11. UNIPEC SPECIAL PROVISIONS AS ATTACHED TO APPLY.

12. SINOCHEM STANDARD TERMS 1-13 AS ATTACHED TO APPLY.

13. SINOCHEM CLAUSES 1-22 AS ATTACHED TO APPLY.

14. 2.5 PERCENT ADDRESS COMMISSION ON FREIGHT/DEMURRAGE DEDUCTABLE
    AT SOURCE.

    1.25 PERCENT BROKERAGE COMMISSION PAYABLE BY OWNER ON
    FREIGHT/DEMURRAGE TO GREATSEAS SHIPPING INC, HONG KONG.

    1.25 PERCENT BROKERAGE COMMISSION PAYABLE BY OWNER ON
    FREIGHT/DEMURRAGE TO MARVIN SHIPPING.

    1.25 PERCENT BROKERAGE COMMISSION PAYABLE BY OWNER ON
    FREIGHT/DEMURRAGE TO EASTPORT CHARTERING PTE LTD, SINGAPORE.

UNIPEC SPECIAL PROVISIONS
------------------------

1. ETA CLAUSE
   PROVIDED IN VOYAGE ORDERS, OWNER/VESSEL TO ADVISE EVERYDAY ETA,
   NOON POSITION, DISTANCE TO GO, WEATHER, SPEED, RPM. IN CASE OF ANY
   PRECEDING PORT(S), ADVISE DAILY BERTHING PROSPECT, LOADING
   (UNLOADING) STATUS, ETD. OWNER/VESSEL TO ADVISE IMMEDIATELY ANY
   VARIATION OF ETA IN EXCESS OF 6 HOURS.

2. EARLY LOADING CLAUSE
   CHARTERER SHALL ENDEAVOUR AND HAS THE OPTION TO EARLY LOAD THE
   VESSEL. ANY TIME SAVED BETWEEN THE ACTUAL BERTHING AND THE ORIGINAL
   COMMENCEMENT OF CALCULATION OF LAYTIME SHALL BE CREDITED TO
   CHARTERER
   AS ADDITIONAL ALLOWED LAYTIME.

3. SHELL OIL POLLUTION INSURANCE CLAUSE:
   OWNERS WARRANT THEY HAVE IN PLACE COVER FOR OIL POLLUTION OF UNTO
   THE MAXIMUM ON OFFER THROUGH THE INTERNATIONAL GROUP OF P & I
   CLUBS (CURRENTLY USD 1 BILLION COVERED BY THE P & I CLUB) AND
   THAT THIS COVER WILL REMAIN IN PLACE THROUGHOUT THE PERIOD OF
   THIS CHARTER.

4. BP ISM CLAUSE
   ADD "OWNER NOT TO BE LIABLE FOR CONSEQUENTIAL DAMAGES"

5. VESSEL SHALL CARRY ON BOARD VALID CERTIFICATE OF CLC.

6. CONOCO WEATHER CLAUSE (AMENDED)
   DELAYS IN BERTHING FOR LOADING OR DISCHARGING AND ANY DELAYS
   AFTER BERTHING WHICH ARE DUE TO WEATHER CONDITIONS SHALL COUNT
   AS ONE HALF LAYTIME OR, IF ON DEMURRAGE, AT ONE HALF DEMURRAGE
   RATE EXCEPT FOR LIGHTERING/STS/SPM/SBM WHERE FULL TIME TO COUNT
   WEATHER PERMITTING OR NOT.

7. FREIGHT PAYMENT CLAUSE: CHARTERER SHALL PAY THE FREIGHT WITHIN
   THREE (3) WORKING DAYS AFTER COMPLETION OF DISCHARGE. OWNER TO
   ENSURE THE DULY SIGNED AND STAMPED (COMPANY STAMP OF THE OWNER OR
   DISPONENT OWNER) ORIGINAL INVOICE REACHES THE CHARTERER PRIOR
   VESSEL'S ARRIVAL AT DISCHARGING PORT.

8. THE PRINCIPLE "ONCE ON DEMURRAGE ALWAYS ON DEMURRAGE" SHALL NOT
   APPLY TO THIS CHARTER PARTY.

9. VESSEL NOT TO TENDER N.O.R. PRIOR TO COMMENCEMENT OF LAYDAYS,
   WITHOUT CHARTERER'S PRIOR CONSENT.

10. VESSEL NOT TO PERFORM INTERIM VOYAGE WITHOUT PRIOR CONSENT FROM
    CHARTERER WHICH NOT TO BE UNREASONABLY WITHHELD.

11. DELETED

12. CHEVRON WAR RISK CLAUSE

13. VESSEL TO BE FULLY BUNKERED TO PERFORM LADEN VOYAGE, AND NOT TO
    BUNKER ENROUTE. UPON LOADING VESSEL WILL PROCEED WITH UTMOST
    DISPATCH TO DISCHARGE PORT.

SINOCHEM STANDARD CHARTERING TERMS 1-13

OWNERS WARRANT THAT THEY WILL REMAIN
A MEMBER OF ITOPF THROUGHOUT THE
ENTIRE DURATION OF THIS CHARTER PARTY

1. WORLDSCALE TERMS AND CONDITIONS AS OF DATE OF CHARTER PARTY TO
   APPLY.

2. ~~REVISED P AND I TOVALOP CLAUSE 1987 TO APPLY.~~

3. GENERAL AVERAGE/ARBITRATION IN LONDON, ENGLISH LAW TO APPLY.

4. YORK/ANTWERP RULES 1974, AS AMENDED IN ~~1975~~ TO APPLY. 1994      2916

5. IF THE VESSEL HAS NOT GIVEN NOTICE OF READINESS TO LOAD BY 1600
   HOURS LOCAL TIME ON THE CANCELLING DATE, LAYTIME SHALL COMMENCE
   UPON ~~THE VESSEL'S ARRIVAL IN BERTH.~~  NOTICE OF READINESS ACCEPTED BY
                                            THE TERMINAL

6. VESSEL AGENTS SHALL BE NOMINATED BY CHARTERERS AT   LOADING AND
   DISCHARGE PORT(S). CUSTOMARY AGENCY FEE ~~SHALL BE FOR OWNERS'~~
   ~~ACCOUNT.~~  AS PER MAIN TERMS

7. ~~OWNER'S OPTION TO SLOW STEAM DOWN TO ABOUT (OWNERS TO ADVISE)~~
   ~~KNOT WEATHER AND SAFE NAVIGATION PERMITTING.~~  VESSEL TO PERFORM LADEN VOYAGE
                                                     AT ABOUT 12 KNOTS WITHIN
                                                     VESSEL'S NATURAL SEGREGATION.

8. NO FREIGHT ON SLOPS CARRIED, IF ANY.

9. ~~FREIGHT TAX (INCLUDING CHINESE FREIGHT TAX OF 4.825 IN CHINA) IN~~
   ~~LOAD AND/OR DISCHARGE PORT(S), IF ANY, TO BE FOR OWNERS'~~
   ~~ACCOUNT.~~  AS PER MAIN TERMS

10. FREIGHT PAYABLE IN UNITED STATES   DOLLARS TO OWNERS' DESIGNATED
    BANK VIA TELEGRAPHIC   TRANSFER AFTER RECEIPT OF OWNERS'
    CONFIRMATION OF COMPLETION OF DISCHARGE.

11. SHOULD A DISPUTE ARISE BETWEEN OWNERS AND THE   CHARTERERS, BOTH
    PARTIES WILL ENDEAVOUR TO SETTLE THE MATTER IN   DISPUTE AMICABLY
    OTHERWISE   SAME   TO BE SETTLED IN LONDON BY ARBITRATION AS   PER
    CHARTER PARTY.

12. OWNERS WARRANT THAT VESSEL TO PROCEED DIRECTLY   TO DISCHARGE PORT
    AFTER LOADING.  AS PROVIDED FOR IN ASBATANKVOY CLAUSE 20 PART C VII

13. THIS FIXTURE HAS TO BE KEPT STRICTLY PRIVATE AND CONFIDENTIAL.

- 1 -

SINOCHEM CLAUSES 1-22
--------------------------

1.  CLEAN BALLAST CLAUSE

    THE VESSEL  SHOULD ARRIVE AT LOAD PORT WITH CLEAN BALLAST WATER
    IN SBT ONLY. ANY DIRTY BALLAST WATER OR CLEAN BALLAST WATER IN
    CBT SHOULD BE DISCHARGED ON TO THE SHORE AND ALL FEES OR
    CHARGES THUS INCURRED SHOULD BE FOR OWNERS' ACCOUNT.

2.  SHIFTING CLAUSE

    IF MORE THAN ONE BERTH AT LOAD OR DISCHARGE PORTS IS USED,
    SHIFTING EXPENSES  TO BE FOR CHARTERERS' ACCOUNT, EXCEPT THAT
    SHIFTING  EXPENSES FROM ANCHORAGE TO FIRST BERTH WILL NOT BE FOR
    CHARTERERS' ACCOUNT.

3.  BILL OF LADING INDEMNIFICATION CLAUSE

    IN THE EVENT THE ORIGINAL BILL OF LADING DOES NOT  ARRIVE AT THE
    PORT(S) OF ULTIMATE DISCHARGE PRIOR TO THE  VESSEL'S ARRIVAL, THE
    OWNERS   SHALL   RELEASE   AND   DISCHARGE   THE   ENTIRE   CARGO   IN
    ACCORDANCE  WITH  THE  CHARTERERS' TELEX  INSTRUCTIONS   AND
    CHARTERERS AGREE TO INDEMNIFY AND HOLD OWNERS HARMLESS  FROM AND
    AGAINST ANY AND ALL CLAIMS, DEMANDS OR  LIABILITIES IN CONNECTION
    WITH OR ARISING OUT OF THE  DISCHARGING OF THE  CARGO WITHOUT
    PRESENTATION OF SUCH ORIGINAL BILL OF LADING. CHARTERER  ALSO TO
    PROVIDE OWNERS WITH A TELEX LETTER OF  INDEMNITY WITH WORDING AS
    PER OWNERS' P AND I CLUB. IT IS UNDERSTOOD THAT NO BANKERS
    GUARANTEE NOR COUNTER SIGNING OF LETTER OF INDEMNITY  BY BANKERS
    SHALL BE  REQUIRED. ~~IF AN ORIGINAL BILL OF LADING IS DISTRIBUTED~~
    TO MASTER  FOR CARGO RECEIVERS, ~~MASTER SHALL DISCHARGE~~ THE ENTIRE
    CARGO AGAINST CARGO RECEIVERS  ~~ENDORSEMENT OF THIS ORIGINAL BILL~~
    OF LADING, ~~AND IN SUCH EVENT NO LETTER OF INDEMNITY SHALL  BE~~
    ~~REQUIRED.~~

    LETTER OF  INDEMNITY SHALL AUTOMATICALLY BECOME NULL AND VOID
    AGAINST PRESENTATION OF ~~1 (ONE)~~ OUT OF 3 (THREE) ORIGINAL BILLS
    | 3 (THREE) | OF LADING, ~~OR AFTER 13 (THIRTEEN) MONTHS AFTER COMPLETION OF~~
    DISCHARGE, ~~WHICHEVER OCCURS FIRST, PROVIDED~~ WITHIN SUCH 13
    (THIRTEEN) MONTHS ~~NO LEGAL~~ PROCEEDINGS HAVE BEEN INSTITUTED
    ~~AGAINST OWNERS.~~

- 3 -

4. AMOCO CLAIMS CLAUSE - ~~60 DAYS~~ 　[90]

OWNERS AGREE TO INVOICE CHARTERERS FOR ALL CHARGES AND CLAIMS
ARISING FROM THIS CHARTER PARTY. INCLUDING BUT NOT LIMITED TO,
DEMURRAGE, DEADFREIGHT, DEVIATION, AND SHIFTING, WITHIN ~~60 DAYS~~ [90]
FROM THE COMPLETION OF DISCHARGE. CHARTERERS WILL NOT BE
RESPONSIBLE FOR ANY CHARGES OR CLAIMS NOT SUBMITTED WITHIN THE
TIME SPECIFIED. [EXCEPT CLAIMS RELATED TO CLAUSE (31]

5. WARRANTY CLAUSE

(A) OWNERS WARRANT THE VESSEL HAVE NO POLLUTION, STRANDINGS, OR ANY
SERIOUS ACCIDENTS WITHIN THE LAST 12 MONTHS FROM THE DATE OF
THIS CHARTER PARTY.

(B) OWNERS WARRANT THAT THE VESSEL IS IN ALL RESPECTS ELIGIBLE FOR
TRADING WITHIN, TO AND FROM RANGES AND AREAS SPECIFIED IN
CHARTER PARTY, AND THAT FOR ALL NECESSARY TIMES SHE SHALL HAVE
ON BOARD FULLY VALID CLC/ITF AND ALL NECESSARY CERTIFICATES
REQUIRED FOR SUCH SERVICE. [OR EQUIVALENT]

~~(C) OWNERS WARRANT THAT VESSEL IS IN COMPLIANCE WITH U.S. PORT AND
TANKER SAFETY ACT.~~

~~(D) THE VESSEL TO BE MEMBER OF P AND I CLUB AND TOVALOP SCHEME AND
SHALL COMPLY WITH THE U.S. COAST GUARD REGULATIONS FOR CRUDE OIL
DISCHARGES.~~

ANY DELAY AND CONSEQUENTIAL DAMAGES/LOSSES SUFFERED BY THE
CHARTERERS DUE TO NON-COMPLIANCE BY THE OWNERS OF THE ABOVE
WARRANTIES (A) TO ~~(D)~~ TO BE FOR OWNERS' ACCOUNT.　[B]

6. PUMPING CLAUSE

THE VESSEL SHALL DISCHARGE THE ENTIRE CARGO WITHIN 24 HOURS OR
MAINTAINING BACK PRESSURE OF 100 PSI AT /SHIP'S ~~TANK~~ PROVIDED [MANIFOLD]
SHORE FACILITIES PERMIT. [EXCEPT WHEN STRIPPING OR PERFORMING COW
FOR WHICH MAXIMUM 8 HOURS ALLOWED]
IF THE VESSEL FAILS TO COMPLY WITH THE ABOVE WARRANTY, THE
CHARTERERS SHALL NOT BE RESPONSIBLE FOR ANY DEMURRAGE CAUSED BY
THE FAILURE.

[AN AVERAGE]

7. ETA CLAUSE

MASTER/OWNERS TO GIVE CHARTERERS, SUPPLIERS AND LOAD PORT AGENT
NOTICES OF ARRIVAL AT LOAD PORT IMMEDIATELY, AND WHERE
APPLICABLE, EVERY 5 DAYS AND THEN 96, 72, 48, 24 AND 12 HOURS
NOTICE. MASTER/OWNERS ALSO TO PROVIDE CHARTERER, RECEIVERS AND
DISCHARGE PORT AGENT NOTICES OF ARRIVAL DISCHARGE PORT
IMMEDIATELY AFTER SAILING LOAD PORT AND WHERE APPLICABLE
FOLLOWED BY EVERY 5 DAYS, AND THEN 96, 72, 48, 24 AND 12 HOURS,
FAILING WHICH THE CHARTERERS SHALL HAVE NO LIABILITY FOR
DEMURRAGE FOR THE PERIOD OF DELAY CAUSED BY FAILURE TO GIVE SUCH
NOTICE.

8. CLEANING CLAUSE

NOT APPLICABLE

(A) ~~FOR CLEAN AND DIRTY PETROLEUM PRODUCTS :~~
MASTER OF THE VESSEL IS TO THOROUGHLY CLEAN THE CARGO TANKS/
LINES/PUMPS OF THE VESSEL UPTO CHARTERERS' INSPECTOR'S
SATISFACTION FOR CARRIAGE OF INTENDED CARGO. OWNERS FURTHER
WARRANT THAT DUE TO THE PROCEEDINGS, VESSEL WILL PRESENT AT LOAD
PORT WITH TANKS/LINES/PUMPS SUFFICIENTLY CLEAN TO LOAD/CARRY/
DISCHARGE CHARTERERS' CARGO WITHOUT CONTAMINATION FROM RESIDUES
OF PREVIOUS CARGO. (DELETE STB VOY CHARTER PARTY PART II CLAUSE
~~16(A).)~~

(B) FOR CRUDES :      ANY TIME/COST INCLUDING DE-INERTING AND RE-INERTING
AS PER ~~STB VOY~~ CHARTER PARTY      FOR INSPECTION TO BE FOR CHARTERER'S ACCOUNT.

ASBATANKVOY

9. AMOCO CARGO RETENTION

IN THE EVENT THAT ANY CARGO REMAINS ON BOARD UPON COMPLETION OF
DISCHARGE CHARTERER SHALL HAVE THE RIGHT TO DEDUCT FROM FREIGHT
AN AMOUNT EQUAL TO THE FOB PORT LOADED VALUE OF SUCH CARGO PLUS
FREIGHT DUE WITH RESPECT THEREOF, PROVIDED THAT THE VOLUME OF
CARGO REMAINING ON BOARD IS PUMPABLE AS DETERMINED BY AN
INDEPENDENT SURVEYOR      LIQUID AND REACHABLE BY VESSEL'S FIXED PUMPS.

APPOINTED BY BOTH OWNERS AND CHARTERERS

ANY ACTION OR LACK OF ACTION IN ACCORDANCE WITH THIS PROVISION
SHALL BE WITHOUT PREJUDICE TO ANY RIGHTS OR OBLIGATIONS OF THE
PARTIES.

- 4 -

10. IGS CLAUSE

OWNERS WARRANT THE VESSEL IS EQUIPPED  WITH A FULLY OPERATIONAL
INERT GAS SYSTEM.

11. SPILLAGE CLAUSE

PRIOR TO COMMENCEMENT OF  LOADING OR DISCHARGING OPERATIONS, ALL
OVERBOARD LINES ARE TO BE CHECKED TO ENSURE THEY ARE  SECURELY
CLOSED.   ALL OTHER PRECAUTIONS ARE  TO BE   TAKEN TO AVOID ANY
SPILLAGE AND/OR LEAKAGE.  IF DURING LOADING OR DISCHARGING
OPERATIONS THERE IS ANY INDICATION OF A SPILLAGE  OR LEAKAGE, THE
VESSEL SHALL IMMEDIATELY  CEASE ALL PUMPING OPERATIONS AND NOTIFY
SHORE PERSONNEL.  THE VESSEL  SHALL NOT RESUME LOADING  OR
DISCHARGING  UNTIL  A THOROUGH  INVESTIGATION IS CONDUCTED AND
APPROPRIATE REMEDIES TAKEN.

12. AFRAN VESSEL TO VESSEL LIGHTERAGE CLAUSE

IF REQUESTED BY CHARTERERS, OWNERS AGREE THAT VESSEL WILL
PERFORM A  VESSEL TO VESSEL LIGHTERAGE OPERATION AT SEA AT A SAFE
LOCATION OTHER THAN THE  CUSTOMARY ANCHORAGE FOR THE DISCHARGE
PORT(S), IN WHICH EVENT, CHARTERERS WILL PROVIDE THE LIGHTERAGE
VESSEL, MOORING MASTER, FENDERS, HOSES AND ALL OTHER  EQUIPMENT
NECESSARY FOR A SAFE OPERATION.

ALL TIME CONSUMED  FROM VESSEL'S ARRIVAL AT THE LIGHTERING SITE
UNTIL THE CARGO HOSES ARE  DISCONNECTED SHALL COUNT AS USED
LAYTIME AS CALCULATED IN PART II HEREOF~~EXCEPT THOSE DELAYS~~
~~ATTRIBUTABLE TO PROVEN WEATHER CONDITIONS WHICH SHALL COUNT AS~~
~~ONE HALF USED LAYTIME, OR IF ON DEMURRAGE AS~~ ONE HALF DEMURRAGE,
~~PROVIDED VESSEL IS OTHERWISE CAPABLE AT ALL TIMES OF DISCHARGE~~
~~WHILE AT THE LIGHTERAGE LOCATION.~~

THE LIGHTERING LOCATION SHALL NOT COUNT AS AN ADDITIONAL
DISCHARGE PORT OR DISCHARGE BERTH IN THE DETERMINATION OF
FREIGHT PAYABLE PER PUBLISHED WORLDSCALE RATES.

OWNERS WARRANT THAT THE VESSEL IS OUT-FITTED AND CAPABLE  OF
SAFELY CARRYING OUT ALL PROCEDURES AS SET OUT IN THE LATEST
REVISED EDITION OF THE ICS/OCIMF SHIP TO SHIP TRANSFER GUIDE
(PETROLEUM).

ALL WEATHER DELAYS FOR SHIP TO SHIP TO COUNT IN FULL AS LAYTIME OR DEMURRAGE
IF ON DEMURRAGE. ALL SUCH OPERATIONS TO BE PERFORMED IN ACCORDANCE WITH
OCIMF SHIP TO SHIP TRANSFER GUIDELINES.

- 5 -

13. AFRAN (GULF) LIGHTERAGE CLAUSE

   IF LIGHTERING IS REQUIRED PRIOR TO BERTHING AT ANY DESIGNATED
   PORT, AND IT IS NECESSARY TO LIGHTER THE VESSEL WHILE AT A
   CUSTOMARY LIGHTERING ANCHORAGE, TIME USED IN LIGHTERING SHALL
   COUNT AS USED LAYTIME AND SHALL COMMENCE SIX (6) HOURS AFTER
   ANCHORING AND PRESENTATION OF NOTICE OF READINESS OR WHEN THE
   FIRST LIGHTERING CRAFT IS MOORED ALONGSIDE, WHICHEVER FIRST
   OCCURS. THE LIGHTERING  ANCHORAGE  SHALL  NOT BE CONSIDERED AS AN
   ADDITIONAL DISCHARGE PORT NOR AN ADDITIONAL DISCHARGE  BERTH AND
   RUNNING TIME FROM THE ANCHORAGE TO THE BERTH SHALL NOT   COUNT AS
   USED LAYTIME OR DEMURRAGE IF ALLOWED LAYTIME HAS EXPIRED.

   ┌─────────────────────────────────────────────┐
   │ ALL WEATHER DELAYS FOR SHIP TO SHIP TO COUNT │
   │ IN FULL AS LAYTIME OR DEMURRAGE IF ON        │
   │ DEMURRAGE. ALL SUCH OPERATIONS TO BE         │
   │ PERFORMED IN ACCORDANCE WITH OCIMF SHIP TO   │
   │ SHIP TRANSFER GUIDELINES                     │
   └─────────────────────────────────────────────┘

14. TEXACO CRUDE OIL WASHING CLAUSE

   VESSEL WILL ROUTINELY EMPLOY CRUDE OIL WASHING (COW) ON
   DISCHARGE IN ACCORDANCE WITH  THE PROCEDURE DESCRIBED IN THE ICS/
   OCIMF GUIDELINES FOR TANK WASHING  WITH CRUDE OIL IN THE ABSENCE
   OF EXPRESS CONTRARY INSTRUCTIONS OF THE CHARTERERS OR
   PROHIBITION BY PORT OR TERMINAL REGULATIONS.  ANY DELAY TO THE
   VESSEL OCCURRING SOLELY AS A RESULT OF COW OPERATIONS SHALL  | UP TO 8 HOUR |
   COUNT AS USED  LAYTIME  OR IF VESSEL IS ON DEMURRAGE, AS
   DEMURRAGE  | COW OPERATION TO BE PERFORMED SIMULTANEOUSLY WITH DISCHARGE |

   *(side note, vertical: IN ALL CARGO TANKS)*

   OWNERS  AGREE TO COMPLY WITH APPLICABLE PORT AND TERMINAL
   REGULATIONS, AND AS  NECESSARY, TO SUBMIT ANY ADVANCE INFORMATION
   OR TECHNICAL DATA THAT MAY BE REQUIRED BY  LOCAL AUTHORITIES
   RELATIVE TO THE CONDUCT OF COW OPERATIONS. OWNERS  FURTHER AGREE
   THAT A REPRESENTATIVE OF THE CHARTERER MAY ATTEND  THE DISCHARGE
   TO MONITOR CARGO OPERATIONS.  | MASTER TO FOLLOW CHARTERER'S EXPLICIT ORDERS |
                                 | GIVEN IN VOYAGE ORDERS                      |

15. ~~FMC CLAUSE~~  | NOT APPLICABLE |

   ~~OWNERS WARRANT TO HAVE SECURED AND  CARRIED ABOARD THE VESSEL A
   U.S. FEDERAL MARITIME COMMISSION'S CERTIFICATE OF FINANCIAL
   RESPONSIBILITY  AS REQUIRED UNDER THE U.S. WATER QUALITY
   IMPROVEMENT ACT OF 1970 (EFFECTIVE 0001/APRIL 3  1971), AS
   AMENDED.~~

   ~~ANY DELAY OR EXPENSE TO THE VESSEL RESULTING  FROM NON COMPLIANCE
   WITH THIS  WARRANTY SHALL BE FOR OWNERS' ACCOUNT AND SUCH DELAY
   WILL NOT COUNT AS USED LAYTIME OR DEMURRAGE IF ALLOWED  LAYTIME
   HAS EXPIRED.~~

                              - 6 -

16. ~~USGG COMPLIANCE CLAUSE~~ [NOT APPLICABLE]

~~OWNERS WARRANT THAT DURING THE TERMS OF THE CHARTER THE VESSEL~~
WILL BE IN FULL COMPLIANCE WITH ALL U.S. COAST GUARD AND SAFETY
REGULATIONS AS CONTAINED IN, BUT NOT LIMITED TO, TITLES 33 AND
46 OF THE CODE OF FEDERAL REGULATIONS AS AMENDED. ANY DELAY OR
EXPENSE TO THE VESSEL RESULTING FROM NON COMPLIANCE WITH THIS
WARRANTY SHALL BE FOR OWNERS. ACCOUNT AND SUCH DELAY WILL NOT
COUNT AS USED LAYTIME OR DEMURRAGE IF ALLOWED LAYTIME HAS
EXPIRED.

17. ~~HEATING CLAUSE~~ [SEE MAIN TERMS]

~~HEATING THROUGHOUT VOYAGE AT OWNERS' OPTION BUT OWNERS GUARANTEE~~
MAXIMUM HEAT 135 DEGREES FAHRENHEIT AND MINIMUM 125 DEGREES
FAHRENHEIT TEMPERATURE ON VESSEL'S ARRIVAL DISCHARGE PORT AND
THROUGHOUT DISCHARGE.

18. ~~CANAL TOLL~~ [NOT APPLICABLE]

~~SUES OR PANAMA CANAL TOLL IF APPLICABLE, SHALL BE FOR OWNERS'~~
ACCOUNT.

19. ~~ADDRESS COMMISSION~~ [SEE MAIN TERMS]

~~1.5 ADDRESS COMMISSION TO CHARTERERS ON FREIGHT, DEADFREIGHT AND~~
DEMURRAGE PAYABLE BY OWNERS. SUCH ADDRESS COMMISSION IS
DEDUCTIBLE BY CHARTERERS FROM FREIGHT, AND IF ANY, DEADFREIGHT
AND DEMURRAGE.

20. ~~SLOP CLAUSE~~

~~SLOP IF ANY, WILL NOT BE PERMITTED TO BE DISCHARGED AT LOADPORT.~~
NO LOAD-ON-TOP OF SLOPS IS ALLOWED AND OWNERS WARRANT VESSEL CAN
COMPLY WITH THE MINIMUM CARGO QUANTITY OF.................(DELETE
SEE TVO CHARTER PARTY PART II CLAUSE 28 LINES 404 - 417).

- 7 -

21. ~~CORPUS CHRISTI CLAUSE~~ NOT APPLICABLE

~~OWNERS WARRANT THAT VESSEL DOES NOT EXCEED 174 FEET FROM KEEL TO~~
THE HIGHEST FIXED POINT ON THE VESSEL. OWNERS ALSO WARRANT
VESSEL IS ABLE TO CLEAR BRIDGE HEIGHT LIMIT OF 138 FEET MEAN
HIGH WATER (IT IS UNDERSTOOD SAFE  DRAFT AT CORPUS CHRISTI MEAN
HIGH WATER IS 39 FEET SALT WATER). FURTHERMORE OWNERS ALSO
WARRANT THAT THE VESSEL  COMPLIES WITH THE FOLLOWING
RESTRICTIONS:

1. LOA 1,000 FEET MAXIMUM
2. BEAM  140 FEET MAXIMUM
3. DEADWEIGHT 130,000 METRIC TONS MAXIMUM
   (OWNERS TO   ADVISE  ON  A ARRIVAL DRAFT OF  45  FEET AT
   CORPUS CHRISTI, WHAT IS VESSEL'S MAXIMUM LOADABLE CARGO
   QUANTITY).

IF ON ARRIVAL AT CORPUS  CHRISTI OR OTHER U.S. GULF PORTS, VESSEL
IS FOUND  TO BE NOT IN COMPLIANCE WITH ANY OF THE ABOVE
RESTRICTIONS AND WARRANTIES, ALL DELAY TO VESSEL, EXPENSE OF
LIGHTERING AND ANY CONSEQUENTIAL EXPENSE OR LOSSES SUFFERED BY
~~CHARTERERS SHALL BE FOR OWNERS' ACCOUNT AND RESPONSIBILITY.~~

22. ~~BUNKER CLAUSE~~ NOT APPLICABLE

~~CHARTERERS SHALL HAVE THE OPTION OF SUPPLYING BUNKERS  REQUIRED~~
FOR PERFORMING THIS CHARTER IF AVAILABLE, PROVIDED THAT  PRICES
AND QUALITY ARE COMPETITIVE. IN THE  EVENT THAT OWNERS ARE ABLE
TO OBTAIN BUNKERS AT  A PRICE LOWER THAN THAT QUOTED BY
CHARTERERS, THEN OWNERS SHALL GIVE CHARTERERS A FURTHER
~~OPPORTUNITY TO MEET SUCH LOWER PRICE.~~

- 8 -

<u>IN THE MATTER OF THE ARBITRATION ACT 1996</u>

AND

<u>IN THE MATTER OF AN ARBITRATION</u>

BETWEEN

EUROFINANCE SERVICES INC                       Claimants
                                              ("The Owners")

and

SINOMART KTS DEVELOPMENT LTD                   Respondents
                                              ("The Charterers")

**"BAGI"**

Charterparty dated 11th June 2004

**FINAL ARBITRATION AWARD**



EXHIBIT
2

2

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

B E T W E E N

EUROFINANCE SERVICES INC                                    Claimants
                                                            ("The Owners")

and

SINOMART KTS DEVELOPMENT LTD                                Respondents
                                                            ("The Charterers")

"BAGI"

Charterparty dated 11th June 2004

**FINAL ARBITRATION AWARD**

WHEREAS:

1.  By a Charterparty on the ASBATANKVOY form incorporating additional terms as
    agreed between the parties and dated 11th June 2004, the Claimants ("the Owners")
    chartered their motor tanker "BAGI" to the Respondents ("the Charterers") to load
    and carry up to a full cargo of crude oil from one ship-to-ship transfer point off port
    limits Hong Kong to one safe port Huizhou, China.

3

2. A dispute subsequently arose between the parties. Clause K of the Preamble of the Charterparty provided as follows:

"K. The place of General Average and arbitration proceedings to be London."

Furthermore, clause 24 of Part II of the Charterparty provided that:

"*ARBITRATION. Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York or in the City of London whichever place is specified in Part 1 of this Charter pursuant to the laws relating to arbitration there in force, before a board of three persons, consisting of one arbitrator to be appointed by the Owner, one by the Charterer, and one by the two so chosen. The decision of any two of the three on any point or points shall be final. Either party hereto may call for such arbitration by service upon any officer of the other, wherever he may be found, of a written notice specifying the name and address of the arbitrator chosen by the first moving party and a brief description of the disputes or differences which such party desires to put to arbitration. If the other party shall not, by notice served upon an officer of the first moving party within twenty days of the service of such first notice, appoint its arbitrator to arbitrate the dispute or differences specified, then the first moving party shall have the right without further notice to appoint a second arbitrator, who shall be a dis-interested person with precisely the same force and effect as if said second arbitrator has been appointed by the other party. In the event that the two arbitrators fail to appoint a third arbitrator within twenty days of the appointment of the second arbitrator, either arbitrator may apply to a judge of any court of maritime jurisdiction in the city above-mentioned for the appointment of a third arbitrator, and the appointment of such arbitrator by such judge on such application shall have precisely the same force and effect as if such arbitrator had been appointed by the two arbitrators. Until such time as the arbitrators finally close the hearings either party shall have the right by written notice served on the arbitrators and on an officer of the other party to specify further disputes or*

4

*differences under this Charter for hearing and determination.  Awards made in*
*pursuance to this Clause may include costs, including a reasonable allowance for*
*attorney's fees, and judgement may be entered upon any award made hereunder in*
*any Court having jurisdiction in the premises."*

The Charterparty also included the *"SINOCHEM  STANDARD CHARTERING*
*TERMS"* which included the following provision:
   *"3.  General Average/Arbitration in London, English Law to apply."*

3.  Following a dispute between the parties, the Owners appointed the undersigned Alan
    Oakley of Hoy's Farm, Upwick, Ware, Hertfordshire to act as arbitrator and called
    upon the Charterers to appoint an arbitrator. No response was received from the
    Charterers. Therefore, in accordance with the procedure set out in clause 24 of the
    Charterparty, the Owners appointed the undersigned Mark Hamsher of 18c Ensign
    Street, London E1 8JD to act as the second arbitrator. We duly appointed the
    undersigned Christopher Moss of 4 Charlotte Place, Wilton Road, London SW1V
    1DP to complete the Tribunal in accordance with the requirements of clause 24. We
    are full members of the London Maritime Arbitrators Association and the Baltic
    Exchange in the City of London. The seat of this arbitration is in England.

4.  On 13th February 2006, the Owners served claim submissions and claimed the sum of
    US$58,800.98, together with interest and costs. The issues in dispute were identified
    as follows:
    i)   outstanding demurrage        US$ 51,649.31;
    ii)  quantum meruit/damages       US$  5,468.75; and
    iii) wasted bunkers               US$  1,682.92

5

5.  On 15th February 2006, we made an order that the Charterers should serve defence
    submissions (and counterclaim submissions, if any) on or before 16th March. The
    Charterers failed to comply with this order or communicate with us.  Therefore, on
    18th March, we made a final and peremptory order that the Charterers serve defence
    submissions by latest 24th March. The terms of our order made it clear that if the
    Charterers failed to comply, we would proceed to our award without further reference
    to them. The Charterers failed to comply with the order or to communicate with us
    and we therefore proceeded to our award.

6.  We are satisfied that the Charterers are aware of the arbitration proceedings and the
    claims being pursued against them. However, they have chosen not to provide a
    defence or communicate with us.

7.  Neither party requested an oral hearing.

8.  In accordance with the provisions of section 52(4) of the Arbitration Act 1996, the
    Reasons for our award are attached hereto and form part of this Final Arbitration
    Award.

NOW WE, the said Alan Oakley, Mark Hamsher and Christopher Moss having taken
upon ourselves the burden of this reference and having carefully and conscientiously
considered the evidence and submissions put before us and having given due weight
thereto and having discussed the matter between ourselves and found ourselves in
agreement, **DO HEREBY MAKE, ISSUE AND PUBLISH** this our joint and agreed
**FINAL ARBITRATION AWARD** as follows:

**WE FIND AND HOLD** that the Owners' claim succeeds in full.

6

**WE THEREFORE AWARD AND DIRECT** that:

A)   the Charterers shall forthwith pay the Owners the sum of US$58,800.98 (fifty-eight thousand, eight hundred United States dollars and ninety-eight cents), together with interest at the rate of 6.5% per annum compounded at three monthly rests from 5th August 2004, until the date of payment;

B)   the Charterers shall bear and pay their own and the Owners' recoverable costs as assessed by us in the sum of £3,005, together with interest on this sum calculated at the rate of 6.5% per annum, compounded at three monthly rests from the date of this award until the date of payment; and

C)   the Charterers shall bear the costs of this Final Arbitration Award in the sum of £4,150 provided that if, in the first instance, the Owners shall have paid any amount in respect of our fees, they shall be entitled to an immediate refund of that amount from the Charterers, together with interest on that sum calculated at the rate of 6.5% per annum, compounded at three monthly rests from the date of payment until the date of reimbursement.

Given under our hands this     9 th     day of May 2006.

Alan Oakley                                                             Witness

Mark Hamsher                                                         Witness

Christopher Moss                                                     Witness